JAMES PARKER

        Plaintiff,

v.                                                       Case No. 2:14-cv-00733

GENESIS BEHAVIORAL SERVICES, INC.

        Defendant.

# COMPLAINT

NOW COMES the Plaintiff, James Parker, (hereinafter, "Parker" or "Plaintiff"), by and through his attorneys, Canfield & Lutz, LLC, and as and for his cause of action against the Defendant, Genesis Behavioral Services, Inc., (hereinafter, "Genesis Behavioral Services" or "Defendant"), alleges and shows to the Court as follows:

## NATURE OF ACTION

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., to correct unlawful employment practices on the basis of race (white) and in retaliation for opposing discriminatory employment practices, as well as to provide appropriate relief to James Parker who was adversely affected by such practices.

2. Defendant subjected Plaintiff to less favorable terms and conditions of employment, unwanted hostile and abusive employment conditions, and terminated his employment because of his race (white), and in retaliation for Plaintiff exercising his rights to complain about the illegal employment practices of Defendant; with reckless indifference to his federally protected rights.

## PARTIES

3. The Plaintiff, James Parker, is an adult male resident of the State of Wisconsin, who currently resides at S90 W22905 Rose Avenue, Big Bend, WI 53103. At all times relevant to this complaint, the Plaintiff was employed by Defendant as a Living Services Program Coordinator.

4. At all relevant times, the Defendant, Genesis Behavioral Services, Inc. has continuously been a business with its principal offices located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee doing business in the city of Milwaukee, Wisconsin and had continuously and does now have at least 15 employees.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq*.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

7. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin.

## FACTUAL ALLEGATIONS

8. On or about February 21, 2013 Plaintiff was hired by Defendant as a Living Services Program Coordinator at Defendant's 2436 North 50th Street, Milwaukee, WI 53210 location, and was the only white male working in that department.

9. On March 4, 2013 and again on March 6, 2013 Plaintiff complained to Defendant's Human Resources Director, Christine White, that he was being subjected to harassment and that one of his supervisors, Michelle Crockett, Defendant's Vice President of Community Affairs and

2

Case 2:14-cv-00733-RTR   Filed 06/25/14   Page 2 of 9   Document 1

hiring supervisor, had been extremely hostile toward him from the moment that he began employment, spoke to Plaintiff in a loud and demeaning manner in front of subordinates, and would belittle Plaintiff at every opportunity she could.

10. On several occasion, including March 6, 2013 Plaintiff heard Tequella Underwood, a Site Checker for Defendant, say "goddamn I'm tired of his white ass."

11. On March 8, 2013 Plaintiff learned that Crockett planned to terminate his employment because she had learned from White of the complaints Plaintiff had made about her to the Human Resources department; however, due to one of Defendant's Site checkers being suspended, Crockett needed to keep Plaintiff employed over the weekend so he could help with site checks.

12. On March 8, 2013 and on March 11, 2013 Plaintiff called Defendant's Corporate Compliance Hotline to inform them of what was happening and file a grievance.

13. In a March 14, 2013 meeting with White and Defendant's Employee Relations Director, Jenni Cincotta, to discuss what had been happening, White apologized for everything that had transpired and informed Plaintiff that they would let him keep his job if he retracted the part of his complaint that implicated White had informed Crockett about the earlier complaints.

14. At the meeting, Plaintiff was informed that he was placed on suspension pending investigation and that he should not come back into work until they could determine a suitable arrangement.

15. On April 2, 2013 Plaintiff returned to work and met with Pauline Ortloff, Defendant's Executive Director and Renee Carter, Program Support Services Coordinator for Defendant;

Plaintiff was informed by Ortloff that Carter would be his new unofficial supervisor from then on out and everyone would be starting out fresh.

16. In the meeting, Ortloff also apologized for Crockett's behavior and explained that none of what had happened was Plaintiff's fault, and that he should have never have had to go through any of what happened.

17. After the meeting, Plaintiff told Carter that he was sorry for all the hassle he had caused; Carter told Plaintiff "don't be; Michelle [Crockett] hired a white boy and it bit her in the ass."

18. Carter also informed Plaintiff that Crockett only hired him because he was white and she wanted to "piss everyone off."

19. In that same conversation, Carter told Plaintiff that she was "shocked and disappointed" by the fact that he was white and that the fact that he was white was going to be the downfall of other people at the company.

20. Plaintiff later complained to White about the racial remarks and treatment he received from Carter.

21. Plaintiff later complained to White about the racial remarks Carter made as well as how Carter and Crockett, had been treating him differently, even though there was nothing different about him and no reason for them to treat him differently than any other employee other than the fact that he was white.

22. On April 25, 2013 Plaintiff was training a new employee of Defendant, Duane Vance, who began adamantly trying to engage Plaintiff in racial conversation.

23. Vance made inappropriate comments about black people and insisted that Plaintiff was a racist and agreed with these comments.

24. When Plaintiff informed Vance that this was unacceptable and that he would not tolerate it, Vance "snapped" and began threatening Plaintiff physically, flinching at him as if he was going to punch or attack Plaintiff, and poking him with his finger; creating a dangerous situation as Plaintiff attempted to drive the car back to the work site.

25. Vance yelled at Plaintiff and mocked him for the complaints that he had made about Carter and Crockett; Plaintiff does not know how Vance gained knowledge of those complaints.

26. Vance also called Plaintiff numerous names such as "honky ass bitch" and told Plaintiff that he would kill him if he didn't keep his mouth shut.

27. Upon arriving back at the work site, Plaintiff immediately parked the car and went to Defendant's corporate office in West Allis, Wisconsin where he met with Cincotta and Gina Singletary, who was one of Defendant's Human Resources employees; Plaintiff explained the situation to them in great detail and also described the constant racial harassment he felt from Carter, Crockett, other employees, and now Vance.

28. Plaintiff explained the constant torment, discrimination, and harassment that he was under because he was the only white male in the department, and that this was a fact his fellow coworkers and supervisors were relentlessly making him suffer for.

29. Plaintiff explained that he feared for his life, was a nervous wreck, was suffering from panic attacks, and was going to need to see a doctor.

30. Once Plaintiff returned home, he also called Defendant's Corporate Compliance Hotline to report what had happened.

31. On April 26, 2013 Plaintiff received a phone call from White asking him to attend a meeting the following Monday at Defendant's corporate office.

32. At the meeting on April 29, 2013 with Singletary, Cincotta, and White, Singletary informed Plaintiff that he was being placed on suspension pending investigation and told Plaintiff to go home and wait until he heard back from her and White before returning to work.

33. On May 6, 2013 in a meeting with White and Carter, Plaintiff was informed that; he was being made to work third shift, his probationary period was being extended, his job duties and description were being changed, he would now be working weekends in place of his subordinates, and he was being removed from a supervisory capacity.

34. Plaintiff's entire job description was changed and he was disciplined by the people that he had filed a formal complaint about only days prior.

35. On May 8, 2013 and May 10, 2013 Plaintiff again called the Corporate Compliance Hotline to complain about the incident with Vance, the way he had been treated, and his demotion and shift change; Plaintiff was told that someone would call him back, but no one ever followed up with him.

36. On or about May 17, 2013 a charge of discrimination was filed against Defendant with the EEOC alleging discrimination based on his race (White) in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliation for complaining about race based discrimination.

37. On or about May 24, 2013, Defendant discharged Plaintiff based on his race (White), in violation of Title VII of the Civil Rights Act of 1964, as amended, and in retaliation for complaining about Defendant's race based discrimination.

38. As a result of Defendant's discriminatory treatment, Plaintiff suffered from panic attacks and needed to seek medical treatment.

39. On March 28, 2014 the EEOC issued a right to sue letter.

## STATEMENT OF CLAIMS

As claims against the Defendant, Plaintiff alleges the following:

### COUNT I
### EMPLOYMENT DISCRIMINATION BASED ON RACE

40. Plaintiff realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 39 above, inclusive, with the same force and effect as though fully set forth and repeated within.

41. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which prohibits discrimination by covered employers on the basis of race, color, religion, or national origin.

42. More than 30 days prior to the institution of this lawsuit, Plaintiff filed a charge with the EEOC alleging violations of Title VII by Defendant. All conditions, precedent to the institution of this lawsuit, have been fulfilled.

43. During Plaintiff's employment with Defendant, Defendant engaged in unlawful employment practices in violation Title VII, 42 U.S.C. § 2000(e) et seq. Such practices include, but are not limited to:

   a. Subjecting Plaintiff to different terms and conditions of employment, levels of scrutiny, and discipline because of his Race (White), than similarly situated non-white employees.

   b. Subjecting Plaintiff to harassment as well as unwanted, hostile, and abusive employment conditions because of his Race (White).

   c. Terminating Plaintiff's employment because of his Race (White) in reckless indifference to his federally protected rights.

44. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of humiliation, pain, suffering, emotional distress, attorney fees and costs, loss of wages, loss of promotional opportunities, and other employment benefits.

## COUNT II
## RETALIATION FOR EXCERCISING PROTECTED RIGHTS

45. Plaintiff realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 44 above, inclusive, with the same force and effect as though fully set forth and repeated within.

46. Defendant intentionally discriminated against Plaintiff by subjecting him to increased scrutiny and singling him out for selective and unwarranted discipline. Defendant ultimately terminated Plaintiff's employment in retaliation for Plaintiff exercising his rights to complain about the illegal employment practices of Defendant, specifically, discrimination based on race, in violation of Title VII, 42 U.S.C. 2000e, *et seq*., and in reckless indifference to his federally protected rights.

47. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of humiliation, pain, suffering, emotional distress, attorney fees and costs, loss of wages, loss of promotional opportunities, and other employment benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

B. Grant to Plaintiff his attorney fees, costs and disbursements as provided by 42 U.S.C. § 12205 and all other applicable statutes and provisions;

C. Grant to Plaintiff whatever other relief this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this complaint.

Dated at Milwaukee, Wisconsin on this the 25th Day of June, 2014.

/s/ Jason Canfield, State Bar No. 1083007
Canfield & Lutz, LLC
Attorney for the Plaintiff
1437 N Prospect Ave, Suite 200
Milwaukee, WI 53202
Ph. 414.935.2810
Fax. 414.935.2821
Jason.Canfield@CanfieldandLutz.com